## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| VISTO CORPORATION, | ) |
| | ) |
| Plaintiff and Counterclaim-Defendant, | ) |
| | ) |
| vs. | ) Case No. 2-06-CV-181-TJW |
| | ) |
| RESEARCH IN MOTION LIMITED, and | ) |
| RESEARCH IN MOTION CORPORATION, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants and Counterclaim-Plaintiffs. | ) |

## VISTO'S OBJECTIONS TO THE MAGISTRATE'S MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION

Pursuant to Federal Rules of Civil Procedure 72(a) and Rule 4(A) of the Local Rules Of Court For the Assignment Of Duties to U.S. Magistrate Judges, Plaintiff Visto Corporation ("Visto") hereby files its Objections to Magistrate Judge Everingham's April 30, 2008, Memorandum Opinion and Order (the "Order").  In support thereof, Visto respectfully states as follows:

## I.  FACTUAL BACKGROUND

The present action is brought by Visto against Research in Motion Limited, and Research in Motion Corporation ("RIM"), for infringement of U.S. Patent Nos. 6,085,192 ("the '192 patent"), 6,023,708, ("the '708 patent"), 6,151,606 ("the '606 patent"), 6,708,221 ("the '221 patent") and 7,039,679 ("the '679 patent") (hereinafter, collectively referred to as the "Visto Patents-In-Suits") and by RIM against Visto for infringement of U.S. Patent Nos. 6,219,694 ("the '694 patent") and  6,389,457 ("the '457 patent") (hereinafter, collectively referred to as the "RIM Patents-In-Suit.").  The Visto Patents-In-Suit in the present action

include claim terms that were previously at issue and construed by the Court in *Visto Corporation v. Seven Networks, Inc.*, Eastern District of Texas Case No. 2:03-CV-333-TJW, *Visto Corporation v. Smartner Information Systems, Ltd.*, Eastern District of Texas Case No. 2:05-CV-91-TJW, and *Visto Corporation v. Microsoft Corp.*, Eastern District of Texas Case No. 2:05-CV-546.

On September 19, 2007, Visto filed its Opening Claim Construction Brief setting forth its position on numerous claim terms related to the Visto Patents-In-Suit.  [Docket Entry No. 111].  Also on September 19, 2007, RIM filed its Opening Claim Construction Brief setting forth its position on numerous claim terms related to the RIM Patents-In-Suit.  [Docket Entry No. 108].  On October 2, 2007, Visto filed its Responsive Claim Construction Brief setting forth its position on numerous claim terms related to the RIM Patents-In-Suit.  [Docket Entry No. 125].  Also on September 10, 2007, RIM filed its Responsive Claim Construction Brief on the Visto Patents-in-Suit.  [Docket Entry No. 124].  On October 12, 2007, Visto filed its Reply to RIM's Responsive Claim Construction Brief.  [Docket Entry No. 130].  Also on October 12, 2007, RIM filed its Reply to Visto's Responsive Claim Construction Brief. [Docket Entry No. 128].  On October 18, 2007, RIM filed its Surreply to Visto's Claim Construction Brief on the Visto Patents-In-Suit.  [Docket Entry No. 136].  On October 31, 2007, Visto filed its Response to RIM's Surreply to Visto's Claim Construction Brief on the Visto Patents-In-Suit. [Docket Entry No. 140]. Following a Claim Construction Hearing before The Magistrate Judge on November 1, 2007, the Court issued an Order on April 30, 2008 construing the claim terms at issue.  On December 12, 2008, RIM submitted its Supplemental Claim Construction Brief.  [Docket Entry No. 150].  On January 3, 2008, Visto filed its Response to RIM's Supplemental Claim Construction Brief.  [Docket Entry No. 155].

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 2**

## II.  OBJECTIONS

Visto objects to The Magistrate Judge's construction of the following terms on the grounds below, and requests that the Court adopt, for each term, the constructions set forth in Visto's Opening Claim Construction Brief on the Visto Patents-In-Suit [Docket Entry No. 111], its Responsive Claim Construction Brief on the RIM Patents-In-Suit [Docket Entry No. 125], Visto's Reply to RIM's Responsive Claim Construction Brief [Docket Entry No. 130], its Response to RIM's Surreply [Docket Entry No. 140], its arguments made at the Claim Construction Hearing on November 1, 2007, and its Response to RIM's Supplemental Claim Construction Brief [Docket Entry No. 150] for the reasons set forth below, as well as the reasons set forth in the claim construction briefing.

**A.**    **Visto Objects to the Court's Construction of Selected Terms and Phrases in the Visto Patents-In-Suit**

**1.  order of steps of method claims**

Visto objects to the Court imposing an order to the steps in claims 1, 2, 8 and 22 of the '192 patent.  As a general rule, the order in which the inventor has listed the steps of a claimed method is not a limitation of the claim. *Interactive Gift Express., Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001).  Thus, any method that performs all of the claimed steps regardless of the order in which those steps are performed can infringe where no specific order has been expressly or implicitly claimed.  *Id.*  With respect to claims 1, 2, 8 and 22 of the '192 patent, no specific order of the method steps has been expressly or implicitly

claimed.   Visto, therefore, contends there is no requirement for the order of the steps of method claims except as expressly set forth in the claims.[1]

### 2.   "storing the differences" and "sending the differences"

Visto objects to the Court's finding that the terms "storing the differences"  and "sending the differences" in claim 8 of the '221 patent mean "storing only the differences" and "sending only the differences", respectively.  The Court has previously construed the term "means for storing the differences . . . " and "means for sending the differences . . . ."  [*Visto v. Seven* Order, Civil Action No. 2:03-CV-333-TJW at 32-33].   Given the Court's prior constructions ans RIM's agreement with these constructions, Visto contends that it is improper to reconstrue the underlying functions for these means-plus-function terms.

### 3.   untrusted client site

Visto objects to the Court's finding that the term "untrusted client site" in claims 10, 20 and 21 of the '606 patent means "a computer that is outside the firewall which is accessible to unprivileged users."   Visto contends that the proper construction of the term "untrusted client site" should be "a computer or mobile device that is outside the firewall and has the possibility of being used by an unauthorized person."   Although the term "untrusted client site" does not appear directly in the specification of the '606 patent, its meaning is apparent from both its ordinary usage and supporting intrinsic evidence.

---

[1]   For each objection, Visto incorporates by reference, in totality, the arguments and authorities previously advanced in its Opening Claim Construction Brief on the Visto Patents-In-Suit [Docket Entry No. 111], its Responsive Claim Construction Brief on the RIM Patents-In-Suit [Docket Entry No. 125], its Reply to RIM's Responsive Claim Construction Brief [Docket Entry No. 130] its Response to RIM's Surreply [Docket Entry No. 140], its arguments made at the Claim Construction Hearing on November 1, 2007, and its Response to RIM's Supplemental Claim Construction Brief [Docket Entry No. 150.

### 4.   automatically disabling

Visto objects to the Court's finding that the term "automatically disabling" in claims 10 and 21 of the '606 patent means "preventing, without a user request to do so, the untrusted client site from accessing at least a portion of the downloaded data after a user has finished using the data."   Supported by the language of the claims, Visto contends that the proper construction of the term "automatically disabling" is "preventing further access without user intervention."   Both claims 10 and 21 refer to data being used by a user -- *viz.*, they are written from the vantage point of the user -- therefore supporting Visto's contention that "automatically disabling" should be based on action "without user intervention."

### 5.   instantiator

Visto objects to the Court's finding that the term "instantiator" in claim 11 of the '606 patent means "an application program interface that creates a window for displaying and enabling the manipulation of the workspace data."   Based on the language of specification of the '606 patent,[2] Visto contends that the term "instantiator" should be construed as: "software that requests the workspace data manager to provide an interface for enabling manipulation of the downloaded data."

### 6.   workspace data manager

Visto objects to the Court's finding that the term "workspace data manager" in claims 10, 11 and 19-21 of the '606 patent requires manipulation of the workspace data by a user in defining this term to mean "a program that allows a user to manipulate workspace data." Visto contends that the '606 patent's specification [col. 2, lines 11-15 and col. 2, lines 47-53]

---

[2]     *See* col. 2, lines 30-32 ("An instantiator requests the workspace data manager to provide an interface for enabling manipulation of downloaded data.").

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 5**

clearly contemplates that a "workspace data manager" is "any application program that enables manipulation of workspace data."  Thus, the proper construction of "workspace data manager" is "a program that enables manipulation of workspace data."

**B.   Visto Objects To the Court's Construction Of Selected Means-Plus-Function Elements in the Visto Patents-In-Suit**

    **1.   means for updating the first version information whenever the first workspace element is modified**

Visto objects to the Court's finding that the corresponding structure for this means-plus-function limitation (which is found in claim 17 of the '192 patent) is the "service engine 245 and desktop service engine 345."  First, Visto contends that the corresponding structure requires either the service engine 245 **or** the desktop service engine 345 but not necessarily both.  As the Court recognized in its Order, the desktop service engine is simply a particular type of service engine which operates on user data.  Also, supported by the '192 patent's specification [col. 7, lines 46-52], Visto contends that "general synchronization modules 425 or 510" are disclosed by the patent as additional structures for "updating the first version information whenever the first workspace element is modified" by sending the preferred version of the workspace element (or the compilation of the changes) to the other store and then updating the outdated workspace element.  The corresponding structure, therefore, should be "service engine 245, desktop service engine 345, or general synchronization modules 425 or 510."

    **2.   means for updating the first version information whenever the first workspace element is modified or updating the second version information whenever the copy is modified**

Visto objects to the Court's finding that the corresponding structure for this means-plus-function limitation (which is found in claim 21 of the '192 patent) is not supported by the

'192 patent's disclosure.  As explained further in Visto's Supplemental Claim Construction

Brief Regarding Definiteness of 35 U.S.C. § 112 ¶ 6 Claim Term, the function recited by this

means-plus-function element is clearly linked in the specification of the '192 patent to the

service engine: "[t]he service engine 245 operates to update the version information 255

whenever modifications are made."  [col. 4, lines 33-35].[3]  Additionally, the specification

states that the "desktop service engine 345 (*i.e.*, a particular service engine 245, FIG. 2)

includes a service program for managing user data 180 (*i.e.*, particular service data 250, FIG.

2) which includes version information 350 (*i.e.*, particular version information 255, FIG. 2)."

[col. 4, lines 48-51].  Thus, depending on the workspace element being modified, the service

engine or the desktop service engine may be invoked to perform the function of updating the

version information.  In addition,[4] Visto maintains its position that "general synchronization

modules 425 or 510 are proper corresponding structure supported by the '192 patent's

specification [col. 7, lines 46-52].  Visto contends that "general synchronization modules 425

or 510" are disclosed by the patent as additional structures for "updating the first version

information whenever the first workspace element is modified" by sending the preferred

---

[3]    Visto incorporates by reference, in totality, the arguments and authorities previously
       advanced in its Supplemental Claim Construction Brief Regarding Definiteness of 35
       U.S.C. § 112 ¶ 6 Claim Term [*Visto Corp. v. Good Tech., Inc*., Civil Action No. 2:06-CV-
       39 (TJW), Docket Entry No. 126].

[4]    As explained in footnote six of Visto's Supplemental Claim Construction Brief Regarding
       Definiteness of 35 U.S.C. § 112 ¶ 6 Claim Term, given that the Court has found that the
       corresponding structure for the "means for updating the first version information
       whenever the first workspace element is modified" is "service engine 245 and desktop
       service engine 345," and has apparently rejected Visto's position that the corresponding
       structure may alternatively include the general synchronization modules 425 or 510, Visto
       contends that, at the very least, the service engine (or the desktop service engine, which is
       simply one type of service engine) is proper corresponding structure for this means-plus-
       function limitation. [*Visto Corp. v. Good Tech., Inc*., Civil Action No. 2:06-CV-39 (TJW),
       Docket Entry No. 126].

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION** - **PAGE 7**

version of the workspace element (or the compilation of the changes) to the other store and

then updating the outdated workspace element.   Therefore, Visto contends that the

corresponding structure for this means-plus-function limitation should be "service engine 245,

desktop service engine 345, or general synchronization modules 425 or 510."

### 3. first means for generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified

Visto objects to the Court's finding that the corresponding structure for this means-

plus-function limitation (which is found in claim 21 of the '192 patent) is the "general

synchronization module 425."   The specification of the '192 patent teaches that general

synchronization module 425 *and* general synchronization 510 are structures for performing

the recited function:

> The general synchronization module 510 includes routines for comparing the
> version information 124 with the last synchronization signature 435, and
> routines for forwarding to the general synchronization module 425 version
> information 124 determined to be modified.   The general synchronization
> module 510 may either maintain its own last synchronization signature 435
> copy (not shown).   Alternatively, the request to synchronize from the base
> system 190 may include a copy of the last synchronization signature 435.

[col. 6, lines 42-51; s*ee also*, col. 7, lines 8-30].   Visto, therefore, contends that the

corresponding structure for this means-plus-function limitation should be "general

synchronization modules 425 or 510."

### 4. second means for generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store on a smart phone outside the firewall

Visto objects to the Court's finding that the corresponding structure for this means-

plus-function limitation (which is found in claim 21 of the '192 patent) is the "general

synchronization module 425."   The specification of the '192 patent teaches that general synchronization module 425 *and* general synchronization 510 are structures for performing the recited function:

> The general synchronization module 510 includes routines for comparing the version information 124 with the last synchronization signature 435, and routines for forwarding to the general synchronization module 425 version information 124 determined to be modified.   The general synchronization module 510 may either maintain its own last synchronization signature 435 copy (not shown).   Alternatively, the request to synchronize from the base system 190 may include a copy of the last synchronization signature 435.

[col. 6, lines 42-51; s*ee also*, col. 7, lines 8-30].   Visto, therefore, contends that the corresponding structure should be "general synchronization modules 425 or 510."

### 5.   means for generating a preferred version from the first workspace element and from the copy based on the first and second examination results

Visto objects to the Court's finding that the corresponding structure for this means-plus-function limitation (which is found in claim 21 of the '192 patent) is the "general synchronization module 425."   The specification of the '192 patent also supports general synchronization module 510 as corresponding structure.   [col. 5, lines 42-56 and col. 6, lines 29-35].  Furthermore, based on the Court's construction of "version information," and in light of the specification [col. 7, lines 39-42], the "content-based synchronization module" also performs the claimed "generating" function by reconciling the modified versions.   Visto, therefore, contends that the corresponding structure should be "general synchronization modules 425 or 510 or content based synchronization module 430."

### 6.   means for storing first workspace data on a first device

Visto objects to the Court's finding that the corresponding structures for this means-plus-function limitation (which is found in claim 8 of the '221 patent) are "data storage

devices 250, 350, and 720." Visto contends that "data storage devices 250, 350 and 720" are merely exemplary forms of physical memory as described within the '221 patent, and that the corresponding structures should be "the physical memory structure on a first device, including data storage devices 250, 350, and 720."

### 7.   means for storing second workspace data on a second device

Visto objects to the Court's finding that the corresponding structures for this means-plus-function limitation (which is found in claim 8 of the '221 patent) are "data storage devices 250, 350, and 720." Visto contends that "data storage devices 250, 350 and 720" are merely exemplary forms of physical memory as described within the '221 patent, and that the corresponding structures should be "the physical memory structure on a second device, including data storage devices 250, 350, and 720."

### 8.   means for executing a workspace data manager on an untrusted client site

Visto objects to the Court's finding that the corresponding structure for this means-plus-function limitation (which is found in claim 20 of the '606 patent) is the "processor 405 and the operating system 440." Visto contends that the '606 patent's specification [col. 4, lines 53-55] supports Visto's inclusion of processor 205 and operating system 240 as corresponding structure and, therefore, the structure corresponding to this means-plus-function limitation should be "the software code of operating system 240 or 440 and processor 205 or 405."

### 9.   means for requesting the workspace data manager to access data temporarily from a remote site

Visto objects to the Court's finding that the corresponding structure for this means-plus-function limitation (which is found in claim 20 of the '606 patent) is "software routines

performing steps 810 and 815 of the 'borrow me' functionality depicted in Fig. 8." Visto contends that the '606 patent's specification [col. 8-9, lines 62-3; col. 10, lines 28-31; and col. 9, lines 59-61] supports Visto's construction that the structure corresponding to this means-plus-function limitation is "instantiator 730."

### 10. means for downloading data from the remote site

Visto objects to the Court's finding that the corresponding structure for this means-plus-function limitation (which is found in claim 20 of the '606 patent) is "communications module 705." The specification of the '606 patent [col. 7, lines 10-16] teaches that the communications module 705 is merely a sub-component of an assistant, which along with other components of the assistant, perform the claimed function. Visto, therefore, contends that the corresponding structure should be "assistant 175, 180, 185, 260 or 700."

### 11. means for placing the data in temporary storage on the untrusted client site

Visto objects to the Court's finding that the corresponding structure for this means-plus-function limitation (which is found in claim 20 of the '606 patent) is "instantiator 730." The "operating systems" and/or the "assistants" cooperate in placing data in storage on the untrusted site. The "instantiator requests the workspace data manager to provide an interface for enabling manipulation of downloaded data," but does not perform the function of placing the data in temporary storage on the untrusted client site. This is performed by the "operating systems" and/or the "assistants," "which enables a user to download workspace data 135…" [col. 4, lines 63-64]. Visto, therefore, contends that the corresponding structures should be "operating system 240 or 440 or assistant 175, 180, 185, 260 or 700."

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 11**

Dallas 256201v1

**C.**     **Visto Objects to the Court's Construction of Selected Terms and Phrases in the RIM Patents-In-Suit**

**1.  host system**

Visto objects to the Court's finding that the term "host system" in claims 1, 2, 22-25, 28-30, and 32-34 of the '694 and in claim 1 of the '457 means "computer system where the redirector software is operating that also includes a memory store where data items are normally stored." Visto further objects to the Court's finding that the term "host system" has the same meaning for the '694 patent and the '457 patent. Supported by the language of the claims, by the specification and by the prosecution history, Visto contents that the proper construction of the term "host system" is "the computer where the redirector software is operating that also includes the primary data store for user messages" as used in the '694 patent and "a desktop networked computer where the redirector software is operating that also includes the primary data store for data items" as used in the '457 patent. The "host system" as described in the common specifications refers to "the computer where the redirector is operating" and includes a "primary memory store." The claims of the '694 patent are specifically directed to "messages" while those of the '457 patent are directed to "data items" -- *viz.*, the prosecution history of the '694 patent disclaimed data items -- therefore supporting Visto's contention that as used in the '694, the "host system includes the primary data store for user messages." Additionally, the preamble of claim 1 of the '457 patent provides an antecedent basis for "host systems" and defines it as a "desktop networked computer" further supporting Visto's contentions distinguishing the constructions of "host system" for the two patents.

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 12**

Dallas 256201v1

### 2.   mobile device terms

Visto objects to the Court's finding that the terms "mobile data communication device" in claims 1-2, 9, 15, 22-24, 28, and 32-34 of the '694 patent and "mobile communication device(s)" in claims 1, and 3-4 of the '457 patent both mean "a portable communication device that is capable of sending and receiving data items wirelessly." Supported by the claims and the prosecution history, Visto contends that the proper construction of the term "mobile data communication device" as used in the '694 patent is "a portable device that is capable of sending and receiving messages via a network connection including a wireless connection" and the proper construction of the term "mobile communication device(s)" as used in the '457 patent is "a portable device that is capable of sending and receiving data items via a network connection including a wireless connection." The claims of the '694 patent are specifically directed to "messages" while those of the '457 patent are directed to "data items" -- *viz.*, the prosecution history of the '694 patent disclaimed data items -- therefore supporting Visto's contention that as used in the '694, the "mobile data communication device" is "capable of sending and receiving <u>messages.</u>"  Additionally, the common specification does not restrict a "mobile data communication device" or a "mobile communication device(s)" to a <u>wireless network</u> connection.  In fact, such a construction excludes other types of "network connections," an embodiment disclosed by the common specification.

### 3.   redirection event(s)

Visto objects to the Court's finding that the term "redirection event(s)" in claims 1, 8, 22, 23, 32, and 34 of the '694 patent means "internal, external or network event(s), the occurrence of which generates a redirection trigger."  Supported by the intrinsic record, Visto

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 13**

Dallas 256201v1

contends the proper construction of the term "redirection event(s)" is "internal, external or network event(s) defined by the user at the host system or the mobile data communication device, the occurrence of which generates a redirection trigger."  In overcoming the prior art, RIM emphasized the importance of being able to configure ("define") redirection events at the host system.  Further support is found in the specification, which states that "redirection events" can be defined by the user at the host system or mobile data communication device," thereby supporting Visto's contention.

### 4.  redirection trigger

Visto objects to the Court's finding that the term "redirection trigger" in claims 1, 22, 23, 32, and 34 of the '694 patent means "a signal to initiate redirection of data items." Supported by the specification, Visto contends that the proper construction of the term "redirection trigger" is "a message or signal generated in response to a redirection event that initiates redirection."  RIM's construction excludes the disclosed embodiment of *messages* as redirection triggers and fails to capture the essence that the "redirection trigger" is generated in response to a redirection event.

### 5.  internal, external and networked events

Visto objects to the Court's finding that the terms "internal event," "external event," and "networked event" in claim 8 of the '694 patent mean "event internal to the host system, the occurrence of which generates a redirection trigger," "event that originates from outside the host system, the occurrence of which generates a redirection trigger," and "event from a computer coupled to the host system via a network, the occurrence of which generates a redirection trigger," respectively.  Supported by the intrinsic record, Visto contends that the proper constructions of the terms "internal event," "external event," and "networked event"

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 14**

Dallas 256201v1

are "a user-defined event that is internal to the host system, which initiates redirection," "a user-defined event that originates from outside the host system, which initiates redirection," and "a user-defined event that is transmitted to the host system from another computer coupled to the host system, which initiates redirection."   The claims specifically point out that these events must initiate redirection.   Furthermore, the specification emphasizes the importance of these events being defined by a user.

### 6.   the shared address terms

Visto objects to the Court's finding that the terms "messages generated at either the mobile data communication device or the host system share the first [email] address," in claims 1, 23, and 32 "messages generated at either the mobile data communication device or the host system share the message sender's first address," in claims 22 and 32 and "thereby allowing messages generated at either the mobile device or the host system share the message sender's email address associated with the host system" in claim 24 of the '694 patent mean "a message generated at the mobile data communication device appears to the message recipient to have the same 'from' messaging address as a <u>message</u> generated at the host system."   Supported by the intrinsic record and RIM's disclaimed subject matter, Visto contends that the proper constructions of the terms "messages generated at either the mobile data communication device or the host system share the first [email] address," "messages generated at either the mobile data communication device or the host system share the message sender's first address," and "thereby allowing messages generated at either the mobile device or the host system share the message sender's email address associated with the host system" mean "messages when generated at either the mobile data communication device or the host system have the same [email] address, which is the first [email] address,"

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 15**

Dallas 256201v1

"messages when generated at either the mobile data communication device or the host system have the same address, which is the first address," and "thereby allowing messages when generated at either the mobile data communication device or host system to have the same email address, which is the particular email address that identifies the message sender on the host system," respectively.   Supporting Visto's contentions are RIM's prosecution statements, which assert that the claims are directed to the use of a single common address, and RIM's amendments, which surrendered the "appears to have been generated" language by using the "shares the same address" language.

### 7.   first address; first email address

Visto objects to the Court's finding that the terms "first address" in claims 1, 22, 28, 29, 32, and 33 of the '694 patent and "first email address" in claim 23 of the '694 patent mean "a user's messaging address" and " a user's email address," respectively.   Clarifying ambiguities in RIM's patents, Visto contends that the proper constructions of the terms "first address" and "first email address" are "a particular user's host system address" and " a particular user's host system email address."   Visto's construction clarifies that the terms refer to addresses of the same single user, not multiple user, which is especially important if the host system is a server computer servicing multiple users.

### 8.   continuously redirecting

Visto objects to the Court's finding that the term "continuously redirecting" in claims 1, 22, 23, 32, and 34 of the '694 patent means "redirecting all messages in response to the redirection trigger."   Supported by the claims, the intrinsic record and prosecution history, Visto contends that the proper construction of the term "continuously redirecting" is "in response to the redirection trigger, redirecting all user selected messages as each new message

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 16**

Dallas 256201v1

is received by the host system." The prosecution history twice evidences that RIM intended "continuously redirecting" to be in response to a "redirection trigger" or "event trigger." Furthermore, to overcome prior art, RIM conceded that "event-dependent forwarding" is not continuous and that forwarding at "pre-defined use-selected" times is likewise not continuous supporting both of which support Visto's construction which includes "redirecting" "as each new message is received by the host system."

### 9. "information regarding the configuration of the mobile data communication device"

Visto objects to the Court's finding that the term "information regarding the configuration of the mobile data communication device" in claim 2 of the '694 patent does not need construction. Visto contends that the proper construction of the term is "Information about the mobile communication device, configured by its user that includes the type of mobile data communication device, its address, preferred message types for redirection, and types of message attachments that the mobile communication device can receive and process." ['694 patent, 3:43-48; 7:57-63].

### 10. "redirector component"

Visto objects to the Court's finding that the term "redirector component" in claims 24, 28, and 33 of the '694 patent are not governed by 35 U.S.C. §112, ¶ 6. Here, "redirector component" invokes purely functional terms and does not recite a specific structure for performing the function of configuring address information of the received message. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318 (Fed. Cir. 1999); *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) As such, Visto contends that the term "redirector component" is governed by 35 U.S.C. §112, ¶ 6 and that the corresponding structure for this means-plus-function element is "redirection software 12 running on the host system 10, which performs the algorithm of FIG. 4." ['694 patent, Fig. 4].

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 17**

Dallas 256201v1

**11. "desktop networked computer"**

Visto objects to the Court's finding that the term "desktop networked computer" in claim 1 of the '457 patent should be construed as "a desktop personal computer (PC) connected to a network." Visto contends that the proper construction of the term is "A user's personal computer (PC) connected to a local-area network (LAN)." [See '457 patent, 2:60-62; 5:49-51; 5:65-66; Fig. 3].

**12. message**

Visto objects to the Court's finding that no construction is necessary for the term "message" found in the '694 patent, claims 1, 9, 15, 22-25, 28-30, 32-34. Supported by statements made by RIM during prosecution, Visto contends that the proper construction of the term is "Email message(s)." [See '694 file history, 10/6/2000 Amendment].

**13. "data items"**

Visto objects to the Court's finding that no construction is necessary for the term "data items" found in the '457 patent, claims 1, and 3-4. Visto contends that the proper construction of the term is "Electronic information selected by the user, such as E-mail messages, calendar events, meeting notifications, address entries, journal entries, personal alerts, alarms, warnings, stock quotes, and news bulletins."

**14. "common address"**

Visto objects to the Court's finding that no construction is necessary for the term "common address" found in the '457 patent, claims 1 and 2. Visto contends that the proper construction of the term is "A particular user's host system address." ['694 patent, 1:61-2:4].

**15. "incoming, outgoing, and sent data items"**

Visto objects to the Court's finding that no construction is necessary for the terms "incoming data items", "outgoing data items" and "sent data items" found in the '457 patent, claim 1. Based on the language of claim 1, Visto contends that the proper construction of the

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 18**

Dallas 256201v1

terms are "Data items received by the host system addressed to the user at the common address", "Data items received by the host system from the mobile communications device addressed to recipient(s) of those data items", and "Data items received by the host system from the mobile communications device addressed to recipient(s) of those data items", respectively. ['457 patent, claim 1].

**16. "address from which data items originated"**

Visto objects to the Court's finding that no construction is necessary for the term "address from which data items originated" found in the '457 patent, claim 1.   Visto contends that the proper construction of the term is "An address that identifies the sender of the data items to the recipient(s) of those data items."   ['694 File History, 12/15/2000 Amendment at 3].

### III.  CONCLUSION

For the foregoing reasons, Visto's objections to the Court's April 30, 2008 Order construing the claim terms at issue should be sustained, and Visto respectfully requests that the Court interpret the disputed terms and phrases from the asserted claims as proposed herein.

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 19**

Dallas 256201v1

DATED:  May 14, 2008                 Respectfully submitted,

                                     /s/ Sam Baxter_____
                                     Samuel F. Baxter, Lead Attorney
                                     TX State bar No. 01938000
                                     Gary S. Kitchen
                                     TX State bar No. 24033656
                                     McKool SMITH, P.C.
                                     104 E. Houston Street, Suite 300
                                     Marshall, TX 75670
                                     Telephone: (903) 923-9000
                                     Facsimile: (903) 923-9099
                                     sbaxter@mckoolsmith.com

                                     Of Counsel:

                                     Robert D. Becker
                                     CA State Bar No. 160648
                                     rbecker@manatt.com
                                     MANATT, PHELPS & PHILLIPS, LLP
                                     1001 Page Mill Road, Building 2
                                     Palo Alto, CA  94304
                                     Telephone: (650) 812-1300
                                     Facsimile: (650) 213-0260

                                     ATTORNEYS FOR PLAINTIFF
                                     VISTO CORPORATION

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S**
**MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 20**

Dallas 256201v1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all

counsel of record via CM/ECF on May 14, 2008.

/s/ Sam Baxter
_____

Samuel F. Baxter

**PLAINTIFF VISTO'S OBJECTIONS TO THE MAGISTRATE'S
MEMORANDUM OPINION AND ORDER REGARDING CLAIM CONSTRUCTION - PAGE 21**

Dallas 256201v1